UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

WILLIAM M. HILL,

        Plaintiff,               Case No. 1:14-cv-76

v.                                           Honorable Paul L. Maloney

DANIEL H. HEYNS et al.,

        Defendants.
_____/

## **OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Heyns, Hoffner, Beckwith, Scheidler, Borst, Losinski and Friend. The Court will serve the complaint against Defendant Houtz.

**Discussion**

I.      Factual allegations

Plaintiff William M. Hill presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF). He sues MDOC Director Daniel H. Heyns and the following LCF employees: Warden Bonita J. Hoffner; Deputy Warden Linda Beckwith; Lieutenant (unknown) Scheidler; Sergeants (unknown) Borst and (unknown) Losinski; and prison guards (unknown) Friend and Donna Houtz.

Plaintiff alleges that, on May 13, 2011, he told Defendant Houtz that he had a "right to choose where he wanted to move into a 'two-man' room, and which would be racially balanced." (Compl. ¶ 12, docket #1, Page ID#3.) Houtz told Plaintiff that she was moving him into B-4-37, rather than his requested B-4-36, because she wanted him up front, apparently where she could keep an eye on him. Plaintiff told Houtz that he would complain to Resident Unit Manager (RUM) Huffman that Houtz was subjecting him to discrimination, because Plaintiff was first on the list to move into the next open room. Houtz told Plaintiff, "This is my unit, and it[']s my call, and furthermore, tell whomever you like, because I run this unit." (*Id.*) Plaintiff then told Houtz that he "had never experienced racism so up close and personal before," because Houtz wanted to move a white prisoner into bunk B-4-36 over Plaintiff's objections. (*Id.* ¶ 13.)

More than two weeks later, on May 30, 2011, Houtz wrote a Class III misconduct ticket on Plaintiff for possession of hobbycraft items, which Plaintiff alleges was issued in retaliation for his accusation of racial bias. During the next few months, Houtz allegedly harassed Plaintiff with unspecified undocumented cell searches and class III misconduct tickets, ostensibly in retaliation for his exercise of his right to file a grievance. On October 21, 2013, Houtz asked

Plaintiff to step into her office, where she informed him that she had found an empty tissue roll while she was inspecting his cell. Houtz told him that she was not going to write a ticket. However, awhile later, she told him that she had changed her mind, and she handed Plaintiff a contraband removal slip. Plaintiff then accused Houtz of still being upset about Plaintiff's accusation of racism and his complaint to Houtz' supervisor. Houtz apparently filed a Class I misconduct ticket, as a result of which Plaintiff was terminated from his employment as a geriatric aide, for which he earned $50.00 to $60.00 per month. Plaintiff asserts that Houtz's actions were taken in retaliation for his filing of grievances.

In a separate set of allegations, Plaintiff contends that, on January 22, 2011, Defendant Losinski approached Plaintiff and told him that he could no longer eat in his housing unit, but was instead required to eat in the dining hall. On February 16, 2011, Losinski approached Plaintiff while Plaintiff was getting a meal tray for his geriatric charge, prisoner Lacky. Losinski "mistakenly assumed" that the tray was for Plaintiff, and said, "Just how many times do you think I'm going to tell you to eat with your unit?!" (*Id.* ¶ 32, Page ID#6.) Plaintiff explained what he was doing. Plaintiff then approached Losinski's supervisor, Lieutenant DeKaiser, who told Losinski to allow Plaintiff to eat while he was performing his duties as a geriatric aide. Losinski returned to the staff seating area and, in a menacing way, looked at Plaintiff and said, "And so it begins." (*Id.* ¶35, Page ID#7.)

Nearly six months later, on June 13, 2013, Plaintiff was called into the control center for a review of a Class II major misconduct. Although Lt. Beecham was reviewing misconducts at the time, Defendant Losinski took it upon himself to review Plaintiff's misconduct. Plaintiff told Losinski that there was no such thing as a Class II major misconduct and that Losinski did not have

the authority to review it under the state statute. Losinski disagreed and, after reviewing the charges, offered Plaintiff five days' loss of privileges as a settlement of the charge. Plaintiff refused the offer and continued to challenge Losinski's authority, and Losinski appeared to become infuriated. Losinski told Plaintiff that he would process the "illegal" Class II misconduct for a formal hearing. (*Id.* ¶ 43, Page ID#8.)

Three months later, on September 13, 2013, Losinski "accosted" Plaintiff while Plaintiff was speaking to Food Service Steward O'Dell about his food portion. (*Id.* ¶ 44.) Losinski challenged Plaintiff about his inappropriate reentry into the food-service line. Plaintiff claimed that he had a right under MDOC policy to speak with food-service staff. Losinsky took Plaintiff's identification and wrote a Class II major misconduct ticket, which Plaintiff alleges was retaliatory for Plaintiff's exercise of his right to speak with food-service personnel. On September 14, 2013, Defendant Borst reviewed the misconduct. Plaintiff again complained that state statutes, rules and the Michigan Constitution barred Borst from reviewing the misconduct, and he told Borst that the misconduct charge was fabricated and that Defendant Losinski had written the ticket for retaliatory reasons. Borst offered Plaintiff seven days' loss of privileges to resolve the misconduct, but Plaintiff refused, telling Borst that she had just become a party to the Losinski's retaliation. Borst then referred the ticket for a hearing before Defendant Schleidler. On September 24, 2013, Schleidler found Plaintiff guilty on one ticket for possession of gambling paraphernalia and on Losinski's ticket for violation of posted rules prohibiting prisoners from reentering the food service line. Plaintiff was given four days' loss of privileges on the first charge and three days' loss of privileges on the second charge.

In his third set of factual allegations, Plaintiff wrote to Defendant Hoffner on October 7, 2013, complaining that the disciplinary procedures under MICH. DEP'T OF CORR., Policy Directive (PD) 03.03.105 violated the Michigan Administrative Procedure Act, MICH. COMP. LAWS § 800.33 and MICH. ADMIN. R. 791.5501, as well as the First, Eighth and Fourteenth Amendments of the United States Constitution and the Michigan Constitution. Plaintiff told Hoffner that, as a result of the filings and adjudications by her staff under PD 03.03.105, Plaintiff had lost desirable prison jobs, room placements and parole eligibility and was at risk of transfer to a higher-custody prison. Plaintiff alleges that, because Hoffner failed to take action in response to his complaint, she is responsible for authorizing and approving staff misconduct.

In addition, Plaintiff alleges that Defendant Beckwith, the immediate supervisor of the other LCF custody staff, was liable for neglecting her duty to protect Plaintiff from fabricated misconduct tickets. Plaintiff also alleges that Beckwith failed to take action against the other Defendants and upheld their actions on appeal. Similarly, Plaintiff alleges that he asked Defendant Heyns to rescind PD 03.03.105, but Defendant Heyns failed to do so.

Plaintiff alleges that Defendants Hoffner, Beckwith and Heyns violated their oaths of office to uphold the Michigan and federal constitutions. Plaintiff alleges that Defendant Friend imposed cruel and unusual punishment on him by administering the loss-of-privileges sanction imposed for Plaintiff's misconduct. And Plaintiff alleges that all Defendants conspired to deprive him of his rights.

Plaintiff seeks declaratory relief, together with compensatory and punitive damages and back pay.

II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Supervisory Liability

Plaintiff alleges that Defendants Heyns, Hoffner and Beckwith violated his rights when they failed to adequately supervise their subordinates and failed to respond as he wished to his complaints and grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Heyns, Hoffner and Beckwith engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them based on their failures to supervise or discipline their employees.

### B.     Conspiracy

Plaintiff broadly alleges that, by their actions and inactions, Defendants conspired to deprive him of his rights. To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F. Supp. 418, 422 (W.D. Mich. 1988). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996). A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. Michigan,* No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995).

Plaintiff's allegation of conspiracy is wholly conclusory and speculative. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on an unsupported inference that, because Defendants disagreed with him or did not believe him, they necessarily must have conspired together to deprive him of

his rights. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. In light of the far more likely possibility that Defendants were acting independently, Plaintiff fails to state a plausible claim of conspiracy.

### C. Retaliation

Plaintiff alleges that Defendant Houtz filed a misconduct ticket against him in retaliation for Plaintiff's complaint to RUM Huffman about Houtz's racial discrimination in room assignments. In addition, Plaintiff alleges that Defendant Losinski retaliated against him for complaining to Lt. Dekaiser and for exercising his First Amendment right to speak with Food Service Steward O'Dell.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). In addition, the filing of a false misconduct ticket amounts to adverse action sufficient to meet the second prong of the retaliation standard. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007).

Further, temporal proximity may, in some circumstances, be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Moreover, "conclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994).

Upon review, the Court concludes that Plaintiff's allegations against Defendant Houtz are sufficient to state a retaliation claim.

Plaintiff's allegations against Defendant Losinski have a number of components, but are based on a core set of facts. Defendant Losinski told Plaintiff on January 22, 2011 that he could

no longer eat before his housing unit was called to the dining hall. On February 16, 2013, Losinski saw Plaintiff obtaining a food tray before his unit had been called. According to Plaintiff, Losinski mistakenly thought that Plaintiff was getting his own meal and challenged Plaintiff on his conduct. Plaintiff told Losinski that he was getting it for his geriatric charge, and Plaintiff then spoke to Lt. DeKaiser about Losinki's challenge. DeKaiser told Losinski to allow Plaintiff to eat while he was performing his duties as a geriatric aide. Losinski allegedly made a hostile comment after he had returned to the staff seating area. (Compl. ¶ 35.) Four months later, on June 13, 2013, Defendant Losinski allegedly retaliated against Plaintiff by reviewing a grievance filed by another officer and offering Plaintiff a settlement of five days' loss of privileges. When Plaintiff rejected the offer, Losinski referred the matter for a formal hearing.

Plaintiff's complaint about Losinki's June 13, 2013 actions falls far short of demonstrating retaliation. Losinski's alleged conduct had no negative impact on Plaintiff and does not amount to adverse action. The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Merely reviewing a misconduct ticket and subsequently forwarding the ticket for a more formal hearing resulted in no objectively reasonable adversity, and no reasonable prisoner would have been deterred from exercising his right to complain to a superior officer by the statement. Moreover, Plaintiff has alleged no facts that would support an inference of retaliatory motive. Instead, he merely alleges the ultimate fact of retaliation. Losinski's review of the ticket did not occur until four months after

the incident in the dining hall. Such an attenuated temporal relationship carries no implication of improper motive. *See Harbin-Bey*, 420 F.3d at 580.

Plaintiff next alleges that, about three months later, on September 13, 2013, Losinski again challenged Plaintiff in the dining hall about Plaintiff having reentered the food line. Plaintiff alleges that he had not reentered the line, but had instead approached the food steward to complain about his portion. Plaintiff allegedly told Losinki that he had not reentered the line. Losinski apparently did not believe Plaintiff's explanation and wrote a misconduct ticket against Plaintiff. Plaintiff contends that he had a First Amendment right to talk to the food steward and that, by writing a ticket against Plaintiff for reentering the food line, Losinski had retaliated against Plaintiff for exercising his First Amendment rights.

It is not at all clear that Plaintiff had a protected interest in speaking with the food steward at the time and place that he did. The Supreme Court repeatedly has recognized that a prisoner's First Amendment rights may be limited by a prison rule if the regulation "is reasonably related to legitimate penological interests." *See Turner v. Safley*, 482 U.S. 78, 89 (1987); *Shaw v. Murphy*, 532 U.S. 223, 228-29 (2001) (reiterating the ability of prison officials to reasonably limit prisoner speech); *Thornburgh v. Abbott*, 490 U.S. 401, 419 (1989) (applying *Turner* in upholding limitations on the publications to which prisoners have access). Plaintiff does not appear to deny that he was in the food-service area after being served, and a rule restricting his right to be there would likely constitute a reasonable restriction on his First Amendment rights.

In any event, assuming that Plaintiff had a First Amendment right to speak with the food steward , Plaintiff's allegations are factually insufficient to indicate that Losinski acted with any retaliatory motive. While Losinski's belief that Plaintiff had reentered the line may have been

mistaken, Plaintiff does not dispute that he was in the food service area after having been served. Nothing about the facts alleged by Plaintiff suggests that Losinski's motivation for writing the ticket was anything other than what Losinski said it was: a belief that Plaintiff had entered the food service area for a second time, in violation of policy. Plaintiff's allegations of an ulterior, improper motive are wholly unsupported. Nor does any inference of retaliation arise from the fact that, seven months earlier, Plaintiff complained to Losinsky's superior.

In the absence of other facts, Plaintiff's allegations that Losinski retaliated against him are conclusory *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### D. Race Discrimination

Plaintiff alleges that Defendant Houtz discriminated against him on the basis of race, when she refused to give him a particular room that became available, despite the fact that he was first on the list to move into the next open room. He alleges that Houtz instead gave the preferred room to a white prisoner with lower priority. On initial review, the Court concludes that Plaintiff has alleged sufficient facts to warrant service of his equal protection claim.

### E. Eighth Amendment

Plaintiff complains that Defendants Borst, Scheidler, Hoffner and Heyns violated his rights under the Eighth Amendment by subjecting him to loss of privileges for a period of five to seven days. Plaintiff also complains that Defendant Friend violated his Eighth Amendment rights by executing the loss-of-privileges sanction. As a result of the imposition of the loss-of-privileges sanctions, Plaintiff lost his preferred prison job and associated income, lost his preferred cell, temporarily was unable to visit with friends and family, and temporarily was confined to his cell.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Mere confinement to a cell or loss of privileges for a few days does not rise to the level of cruel and unusual punishment proscribed by the Eighth Amendment. In fact, the Supreme Court has recognized that the more serious sanction of placement in segregation, which involves even greater restrictions on a prisoner's privileges, is a routine discomfort that is "'part of the

penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). Further, the loss of a prison job is not an "other condition intolerable for prison confinement." *Rhodes*, 452 U.S. at 348. As the Sixth Circuit has held, without a showing that basic human needs were not met, the denial of privileges cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011) (addressing the more serious sanction of segregation); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).

### F. Due Process

Plaintiff alleges that he was deprived of his rights to procedural and substantive due process in a variety of ways. First, he alleges that Defendant Borst violated his rights by processing Losinski's Class II misconduct ticket, both because the ticket was retaliatory and because she had no authority under the state statute, administrative rule or the Michigan Constitution to review a Class II misconduct, to offer Plaintiff seven days' loss of privileges to resolve it, or to forward it for a formal hearing. Second, Plaintiff alleges that Defendant Scheidler had no authority under the state statute, administrative rule or Michigan Constitution to hold a formal hearing on Losinski's ticket for violation of posted rules about reentering the food service line or on another Class II charge of being in possession of gambling paraphernalia. Third, Plaintiff alleges that Defendant Hoffner violated his due process rights by continuing to implement PD 03.03.105, thereby allowing Plaintiff to lose his privileges without a formal hearing conducted by an independent hearing officer. Finally, Plaintiff complains that Defendant Heyns violated his right to due process by authorizing implementation of PD 03.03.105, which permits the loss of privileges and possible loss of a prison job and associated prison income as consequences of a Class II misconduct conviction.

1. Procedural Due Process

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

For the same reasons, the less serious loss-of-privileges sanction does not rise to the level of a liberty interest.

Moreover, the Sixth Circuit repeatedly has found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same). In addition, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730, at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)).

In sum, because Plaintiff has no liberty interest in his prison privileges or prison employment, he is not entitled to the procedural protections of the Due Process Clause. Therefore, his procedural due process claims against Defendants Borst, Losinski, Scheidler, Hoffner and Heyns fail to state a claim.

2. <u>Substantive Due Process</u>

Plaintiff also asserts a violation of his substantive due process rights under the Fourteenth Amendment. "Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431 (6th Cir. 2002). "Substantive due

process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)).

The substantive due process doctrine is inapplicable to Plaintiff's claims. "Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989) (discussing the Fourth and Eighth Amendments)). If such a particular amendment exists, the substantive due process claim is properly dismissed. *Id.*; *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, there are specific constitutional amendments that apply to Plaintiff's claims. For example, the Eighth Amendment provides an explicit source of constitutional protection to Plaintiff's concerns about the conditions of his confinement. *See Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (because the Eighth Amendment supplies the explicit textual source of constitutional protection for claims governing a prisoner's health and safety, the plaintiff's substantive due process claim was subject to dismissal). Similarly, the First Amendment provides an explicit textual source of constitutional protection for Plaintiff's retaliation claims. Thus, the standard applicable to that source, the First Amendment right to be free from retaliation, and not the more generalized notion of substantive due process should be applied. *Graham*, 490 U.S. at 395; *see also Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002) (holding that, after *Graham*, the First Amendment standard is the sole source of substantive protection); *Brandenburg v. Housing Auth.*

*of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (A "substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim."). Likewise, the Fourteenth Amendment Due Process Clause would apply to protect Plaintiff's liberty interest in his misconduct proceedings. Consequently, Plaintiff's substantive due process claim will be dismissed.

### G. State-Law Claims

Plaintiff alleges that PD 03.03.105 is unconstitutional, because it violates MICH. COMP. LAWS § 800.33 and MICH. ADMIN. R. 791.5501. He also alleges that PD 03.03.105 was improperly applied in reviewing his misconduct tickets.

Defendants' alleged failure to comply with a state statute, administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Further, Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). As a consequence, Plaintiff's allegations that Defendants Heyns, Hoffner, Beckwith, Scheidler, Borst, Losinski and Friend violated MICH. COMP. LAWS § 800.33, MICH. ADMIN. R. 791.5501, and MICH. DEP'T OF CORR., Policy Directive 03.03.105 fail to state a claim under § 1983.[1]

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over his state-law claims, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against

---

[1] The Court notes that Plaintiff makes no allegation that Defendant Houtz violated his rights under these provisions.

needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Heyns, Hoffner, Beckwith, Scheidler, Borst, Losinski and Friend will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendant Houtz.

An Order consistent with this Opinion will be entered.


Dated:     February 13, 2014              /s/ Paul L. Maloney
                                          Paul L. Maloney
                                          Chief United States District Judge